```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

```
UNITED STATES OF AMERICA,    )
                             )
     Plaintiff,              )
                             )
v.                           )    No. 2:09-cr-20312-JPM
                             )
LANDREO LURRY,               )
                             )
     Defendant.              )
```

**ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Landreo Lurry's ("Defendant") Motion to Suppress (Docket Entry ("D.E.") 25), filed February 25, 2010. The Court referred the motion to the Magistrate Judge for Report and Recommendation on March 3, 2010. (Report & Recommendation ("Rep. & Rec.") (D.E. 26).) A hearing on the motion was held before the Magistrate Judge on June 17, 2010. (D.E. 37.) The Report and Recommendation was received on June 23, 2010. (D.E. 42.) The Magistrate Judge recommended that the Court deny Defendant's Motion to Suppress. (Rep. & Rec. 16.) Defendant filed his objections to the Report and Recommendation on August 3, 2010. (D.E. 51.) The Government responded in opposition on August 17, 2010. (D.E. 52.) After de novo review, the Court ADOPTS IN PART and REJECTS IN PART the

1

Magistrate Judge's Report and Recommendation and DENIES Defendant's Motion to Suppress.

**I. Background**

Defendant is charged in a one-count indictment with possessing a gun as a convicted felon, in violation of 18 U.S.C. § 922(g). (D.E. 3.) Defendant seeks to suppress "any and all physical evidence, . . . any and all observations of law enforcement officers, . . . [and] any and all statements" arising from a traffic stop that occurred on August 12, 2009, near the intersection of Macon Road and Rosamond Avenue in Memphis, Tennessee. (Def.'s Mem. in Supp. of Mot. to Suppress (D.E. 25) 2.)

On August 12, 2009, Officer Kevin Williams ("Officer Williams") of the Memphis Police Department was patrolling in a squad car equipped with an automatic license plate reader ("ALPR") unit. (June 17, 2010 Mot. to Suppress Hr'g Tr. ("Hr'g Tr.") 20.) Officer Williams was following a blue 2003 Chevrolet Cavalier[1] north on Holmes Street when the ALPR unit revealed that an outstanding warrant existed for the car's owner or occupant.[2] (Id. at 22-23.) According to the ALPR database, the warrant was for a "male black." (Id. at 24.) Officer Williams saw that a black male was driving the car; he verified this by shining his

---

[1] Defendant was driving his girlfriend's car. (Hr'g Tr. 83.) Nevertheless, the Court will refer to the 2003 Chevrolet Cavalier as "Defendant's car" throughout this Order.
[2] The warrant was for Defendant's girlfriend's brother. (Rep. & Rec. 4 n.1)

spotlight into the car.  (Id. at 24-25.)  Officer Williams initiated a traffic stop.  (Id. at 25.)  Defendant drove for several yards before pulling over near the intersection of Holmes Street and Rosamond Avenue.  (Id.)

After Defendant pulled over, Officer Williams noticed that Defendant was "moving around a lot" and "nudging on the driver's [side] door."  (Id.)  Officer Williams observed that Defendant's behavior was consistent with flight.  (Id.)  As a result, Officer Williams ran toward the car and told Defendant to "quit moving so much."  (Id. at 26.)  Defendant got out of the car and replied that his driver's license was suspended.  (Id.)  Officer Williams then patted Defendant down.  (Id.)  As he frisked Defendant for weapons, Officer Williams spotted a plastic grocery bag full of shotgun shells lying on the "rear seat right behind the driver's side."  (Id. at 27.)  Defendant was placed unhandcuffed in the back of Officer Williams's squad car.  (Id. at 26-29.)

Officer Williams told his partner, Officer Hazelrig, that he suspected that Defendant had a shotgun in the car.  (Id. at 28.)  While Officer Hazelrig conducted a background check on Defendant, Officer Williams returned to Defendant's car to search for a shotgun.  (Id. at 29.)  He found a sawed-off shotgun underneath the passenger seat.  (Id. at 29-30.)  Officer Williams then walked back to his squad car to arrest Defendant.

3

(Id. at 30.)  As he opened the door, Defendant jumped out.  (Id. at 30-31.)  Defendant stated "I ain't going to jail."  (Id. at 31.)  Officer Williams, in his attempt to restrain Defendant, struggled with Defendant for at least two minutes.  (Id.)

Defendant's father, Charles Lurry ("Lurry"), was at the scene.  (Id.)  Lurry implored Defendant to "quit fighting the police."  (Id. at 32.)  Officers Williams and Hazelrig eventually managed to handcuff Defendant.  (Id.)  Officer Williams became ill after the fight and went to lie down in the grass.  (Id. at 56.)

Officer Joseph Johnson ("Officer Johnson"), who had responded to Officer Williams's calls for backup, retrieved the shotgun and the ammunition from Defendant's car.  (Id. at 65-66.)  Officer Johnson experienced some trouble in unloading the shotgun.  (Id. at 66.)  Defendant yelled something to Officer Johnson about the proper unloading method.  (Id.)  Officer Johnson could not hear everything that Defendant had shouted, so Officer Johnson asked Officer Hazelrig what Defendant had said.  (Id.)  Officer Hazelrig replied that Defendant had advised Officer Johnson to "push the button on top to unload it."  (Id.)  Defendant had not been given his Miranda warnings before his statement to Officer Johnson.  (Id. at 67.)

4

**II. Standard of Review**

"A district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the Magistrate Judge. 28 U.S.C. §636(b)(1)(C). The Court is not required to review those aspects of the report and recommendation to which no objection has been made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The Court should adopt the findings and rulings of the Magistrate Judge to which a party files no specific objection. Id.; United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

**III. Analysis**

The Magistrate Judge recommended that Defendant's Motion to Suppress be denied. (Rep. & Rec. 16.) In doing so, the Magistrate Judge made the following conclusions of law: (1) there was reasonable suspicion to support a Terry stop; (2) the warrantless search of Defendant's car did not violate the Fourth Amendment; and (3) there was no basis to suppress Defendant's statement about the shotgun. (Id. at 13, 15-16.)

**a. Defendant's Objections to Findings of Fact**

Defendant offers numerous objections to the Magistrate Judge's proposed findings of fact. Defendant attacks the

5

Magistrate Judge's conclusions with respect to the testimony of John Harvey ("Harvey"), Officer Williams, Officer Johnson, and Lurry. (Def.'s Objections to Report and Recommendation on Def.'s Mot. to Suppress ("Def.'s Objections") (D.E. 51) 3-7.) The Court addresses each of Defendant's factual objections in turn.

Defendant contends that the Magistrate Judge's finding that the ALPR unit was in good working order on August 12, 2009 is "not supported by the record." (Id. at 3.) While Harvey did not state directly that the ALPR unit was in good working order, he did testify that "two records . . . both for male blacks at the same address . . . appeared to have been issued prior to the arrest." (Hr'g Tr. 14.) Accordingly, the Court OVERRULES Defendant's objection.

Defendant argues that the Magistrate Judge erred in finding that Harvey's test of the ALPR unit showed that "someone associated with this vehicle's . . . address possessed two outstanding citations for driving on a suspended license on the night of the stop." (Rep. & Rec. 3-4). Defendant urges the Court to accept its alternative interpretation of Harvey's testimony, namely that "the information . . . retrieved indicated that there were two records for driving on a revoked, suspended or cancelled license, both for male blacks at the same address." (Def.'s Objections 3.) Defendant's version appears

6

to be nothing more than a restatement of the Magistrate Judge's finding.  Accordingly, the Court OVERRULES Defendant's objection.

Defendant objects to the Magistrate Judge's finding that the warrant information from August 12, 2009 was unavailable because the ALPR database does not retain records of executed warrants.  (Id.)  Defendant notes that Harvey, upon cross-examination, acknowledged that it was his "understanding" that nothing in the ALPR system indicated that Defendant was wanted. (Hr'g Tr. 17.)  Nevertheless, Harvey's understanding that the warrant was not for Defendant does not undermine the Magistrate Judge's finding that the warrant information from August 12, 2009 was unavailable at the time of the hearing.  Accordingly, the Court OVERRULES Defendant's objection.

Defendant argues that Officer Williams "did not testify about [Defendant's] furtive movements . . . ."  (Def.'s Objections 4.)  Much of the Magistrate Judge's characterization of Officer Williams's testimony about Defendant's movements is merely descriptive.  Moreover, the Magistrate Judge discussed specific parts of Officer Williams's testimony, including Defendant's "nudging on the driver's side door."  (Rep. & Rec. 4.)  Taken together, Defendant's "moving around a lot" and "nudging on the door" may properly be described as "furtive

7

movements." (Hr'g Tr. 25; Def.'s Objections 4.) Accordingly, the Court OVERRULES Defendant's objection.

Defendant objects to the Magistrate Judge's finding that "Officer Williams grabbed the back of Defendant's pants when he exited the vehicle . . . [and] performed a pat down search . . . while standing next to the vehicle." (Rep. & Rec. 5.) According to Defendant, Officer Williams indicated in his testimony that he "patted Defendant down while Defendant was next to the driver's-side [sic] rear of the vehicle . . . ." (Def.'s Objections 4.) This is a distinction without a substantive difference. As a result, the Court OVERRULES Defendant's objection.

Defendant argues that Officer Johnson, contrary to the Magistrate Judge's finding, "actually searched the vehicle to find the bag of shells." (Id.) The record reflects that Officer Johnson retrieved the shells after he began searching Defendant's vehicle. (See Hr'g Tr. 65 ("What, if anything, did you discover? On the rear seat . . . was like a Kroger plastic bag containing some shotgun shells.").) This does not contradict Officer Williams's testimony that the shells were in plain view. Officer Johnson likely knew where to find the bag of shells because he talked to Officer Williams before searching Defendant's car. (Id. at 73 ("So all you know is that you

8

became aware of it somehow? Talking to Officer Williams.").) Accordingly, the Court OVERRULES Defendant's objection.

Defendant contends that the Magistrate Judge erroneously found that Defendant said: "[T]ell him to push the button on top [to unload the shotgun]." (Rep. & Rec. 8.) Defendant explains that Officer Johnson "actually testified that he did not hear what Defendant said . . . ." (Def.'s Objections 5.) Defendant's objection does not effectively counter Officer Johnson's testimony that he heard Defendant yell something at him. (Hr'g Tr. 66 ("I could tell he said something about the gun.").) Accordingly, the Court OVERRULES Defendant's objection.

Defendant objects to the Magistrate Judge's finding that Defendant was being placed in Officer Williams's squad car when Lurry arrived. (Rep. & Rec. 9.) This finding appears to be in error. Lurry stated twice that Defendant was already inside Officer Williams's squad car when he arrived. (Hr'g Tr. 82, 91.) Accordingly, the Court SUSTAINS Defendant's objection.[3]

Defendant challenges the Magistrate Judge's finding that all the witnesses were credible. (Def.'s Objections 5.) Defendant points to three putative inconsistencies in the police officers' testimony. (See id. at 5-7.) First, Defendant argues

---

[3] This error does not affect the validity of the Magistrate Judge's other proposed findings of fact and conclusions of law.

9

that a conflict exists between Officer Williams's and Officer Johnson's testimony regarding the shotgun shells. (Id. at 6.) Specifically, Officer Williams testified that the shells were in plain view, while Officer Johnson could not remember whether the shells were on the seat or the floor.[4] (Id.) Officer Johnson's inability to remember the precise location of the shells does not discredit Officer Williams's testimony that the shells were in plain view. Accordingly, the Court OVERRULES Defendant's objection.

Second, Defendant asserts that it is "improbable" that Officer Williams would have told Lurry that his son would be released if Officer Williams had actually observed a bag of shotgun shells in Defendant's car. (Id.) Defendant ignores the fact that Officer Williams did not try to handcuff Defendant until after the shotgun was found. (Hr'g Tr. 29-31.) Moreover, Officer Williams simply had no duty to say anything to Lurry about the traffic stop. Defendant's assertion is unfounded. Accordingly, the Court OVERRULES Defendant's objection.

Finally, Defendant contends that the shotgun shells could not have been in plain view because Officer Johnson "testified that the vehicle was not parked under a street light." (Def.'s Objections 7.) Defendant's argument lacks merit. Even assuming

---

[4] Defendant's argument that Officer Johnson would not have discovered the shells but for his search of Defendant's car fails because Officer Johnson talked to Officer Williams before he searched Defendant's car. (Hr'g Tr. 73.)

10

Defendant's car was not parked directly beneath a street light, this does not compel Defendant's conclusion that the shells could not have been in plain view. Officer Williams testified that street lights were present. (See Hr'g Tr. 56-57 ("I remember laying my head on that street light. And it's like all of the cars were right there by that street light . . . .").) Furthermore, Lurry stated that he could see "flashing blue lights" as he arrived. (Id. at 82.) The Court rejects Defendant's contention that the shotgun shells could not have been in plain view. Accordingly, the Court OVERRULES Defendant's objection.

### b. Defendant's Objections to Conclusions of Law

Defendant raises three objections to the Magistrate Judge's proposed conclusions of law: (1) the Terry stop violated Defendant's Fourth Amendment rights; (2) the shotgun shells were not in plain view,[5] rendering the plain view exception inapplicable; and (3) Defendant's statement should be suppressed under the "fruit of the poisonous tree" doctrine. (Def.'s Objections 8, 19, 21.)

The Fourth Amendment applies to investigatory stops of cars. See, e.g., United States v. Hensley, 469 U.S. 221, 226 (1985). A police officer must have a "particularized and objective basis for suspecting the particular person stopped of

---

[5] The Court rejected this argument on pages 10 and 11 of this Order.

criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). The Court must look to the "totality of the circumstances" in order to ascertain whether a "particularized and objective basis for suspecting legal wrongdoing" exists. United States v. Pearce, 531 F.3d 374, 380 (6th Cir. 2008) (internal quotations omitted). The suspicion must be "more than . . . a 'hunch' of criminal activity" but may be less than the "level required for probable cause." Id. (citing, inter alia, United States v. Arvizu, 534 U.S. 266, 274 (2002)).

The record shows that Officer Williams had an objectively reasonable suspicion to conduct an investigatory stop of Defendant. The ALPR unit alerted Officer Williams that the car's owner or occupant had an outstanding warrant.[6] (Hr'g Tr. 22-23.) The warrant was for a "male black." (Id. at 24.) Officer Williams shone his spotlight into Defendant's car to verify that the driver was an African-American male.[7] (Id.)

---

[6] Defendant relies on Judge Moore's dissent in United States v. Ellison, 462 F.3d 557, 564-74 (6th Cir. 2005) (Moore, J., dissenting) for the proposition that a police officer may not "conduct a search using the license plate number to access information about a vehicle . . . ." (Def.'s Objections 8.) The Sixth Circuit held in Ellison that a "motorist has no reasonable expectation of privacy in the information contained on his license plate under the Fourth Amendment." 462 F.3d at 561. The Court notes that Judge Moore's dissent does not control. See Parks v. Fed. Express Corp., 1 Fed. App'x 273, 275 (6th Cir. 2001).
    Defendant also makes a number of policy arguments in favor of granting Fourth Amendment protection to information obtained from a license plate number. (Def.'s Objections 11-19.) This Court is not the proper forum for resolving such policy disputes.
[7] Defendant suggests that the stop might have resulted from illegal racial profiling. (Def.'s Objections 16.) The Court disagrees. See United States v. Waldon, 206 F.3d 597, 604 (6th Cir. 2000) ("[A] police officer may

12

This alert provided Officer Williams with a particularized and objective basis for suspecting that Defendant had committed a crime.[8]  Accordingly, the Court OVERRULES Defendant's objection that the Terry stop violated Defendant's Fourth Amendment rights.

Defendant asks the Court to suppress his statement to Officer Johnson under the "fruit of the poisonous tree" doctrine.  (Def.'s Objections 21.)  The doctrine bars the admission of evidence obtained by "exploitation of [the] illegality" of a search or seizure.  Pearce, 531 F.3d at 383 n.2 (citing Hudson v. Michigan, 547 U.S. 586, 592 (2006)).  Here, the Terry stop of Defendant was permissible because Officer Williams had an objectively reasonable suspicion that Defendant had an outstanding warrant.  Officer Williams had sufficient justification to search Defendant's car because he observed a bag of shotgun shells in plain view.  See id. at 384 n.4 (discussing the plain view exception).  Because the stop and the search were lawful, the "fruit of the poisonous tree" doctrine does not apply.  Accordingly, the Court OVERRULES Defendant's objection that his statement must be suppressed.

---

legitimately consider race as a factor if descriptions of the perpetrator known to the officer include race.").
[8] The Supreme Court has held that a police officer may make a Terry stop to investigate a reasonable suspicion that a person was involved in a completed crime.  See Hensley, 469 U.S. at 229 ("[W]here police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person . . . in the absence of probable cause promotes the strong government interest in . . . bringing offenders to justice.").

## IV. Conclusion

For the foregoing reasons, upon <u>de novo</u> review, the Court ADOPTS IN PART and REJECTS IN PART the Magistrate Judge's Report and Recommendation.  Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED this 8th day of November, 2010.

```
                              ___/s/ Jon P. McCalla____
                              JON P. McCALLA
                              CHIEF U.S. DISTRICT JUDGE
```